IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA M. D.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 3006 |
| v. ) | |
| ) | Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Maria D.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 22, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 26, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.    **Procedural History**

On October 9, 2014, Plaintiff filed a claim for DIB and SSI, alleging disability since March 31, 2014, due to diabetes, peripheral nerve disorders, vision issues, hypertension, and acid reflux. [Dkt. 19-1, R. 118, 338-45.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 130-31, 150-51.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 24, 2017. [R. 73-116.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 76-107.] Vocational expert ("VE") Thomas Dunleavy also testified. [R. 107-16.] Initially, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act, and the Social Security Administration Appeals Council remanded the matter for the ALJ's further consideration. [R. 155-75, 182-83.] A second hearing before the ALJ was held on January 4, 2019. [R. 38-70.] Plaintiff again personally appeared and testified at the hearing and was represented by counsel. [R. 41-66.] VE Sara Gibson also testified. [R. 66-70.] On March 15, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled. [R. 15-31.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

II.    **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 15-31.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 31, 2014. [R. 18.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity, diabetes mellitus, neuropathy, depression, and generalized anxiety

disorder. [*Id.*] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 19-21.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she cannot push or pull with her upper extremities; she can only occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds; she can only occasionally balance, stoop, kneel, crouch, or crawl; she can only occasionally be exposed to hazards; she can only frequently handle and finger bilaterally; she must have ready access to a bathroom; she can perform simple, routine, repetitive tasks and make simple work-related decisions; she can handle occasional changes in the workplace setting; and she can have occasional contact with supervisors and coworkers but no interaction with the general public. [R. 21-29.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work. [R. 29.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 30-31.]

## DISCUSSION

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step

inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id*.

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v.*

4

*Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.    Analysis**

Plaintiff argues that the ALJ (1) failed to accommodate all of Plaintiff's non-exertional limitations in the RFC, (2) improperly rejected the opinions of treating sources, and (3) relied upon impermissible inferences to undermine Plaintiff's subjective statements about her symptoms. [Dkt. 22, Pl.'s Mem. at 7-15.] The Commissioner argues in opposition that the ALJ reasonably weighed the medical opinions, appropriately assessed Plaintiff's subjective statements, and then properly determined Plaintiff's RFC. [Dkt. 27, Def.'s Mem. at 2-18.] For the reasons that follow, the Court affirms the ALJ's decision.[3]

---

[3] The Court addresses the arguments in an order presented by the Commissioner because the ALJ's evaluation of the medical evidence and Plaintiff's subjective complaints informed her crafting of Plaintiff's RFC.

5

### A. Treating Sources' Opinions

The ALJ must evaluate "every medical opinion" and assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.[4] 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Generally, more weight is given to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(c); *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). Accordingly, the ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted). If a treating physician's opinion is not given controlling weight, the ALJ must then determine what weight the assessment merits. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). In that instance, the ALJ evaluates all medical opinions according to the following factors: (1) whether there was an examining or treating relationship; (2) the length, nature, and extent of the treatment relationship; (3) the frequency of examination; (4) the consistency and supportability of the physician's opinion; and (5) the physician's specialty. 20 C.F.R. § 404.1527(c). If the ALJ discounts the physician's opinion after considering these factors, the Court "***must*** allow that decision to stand so long as the ALJ minimally articulated her reasons—a very deferential standard that [the Seventh Circuit has]

---

[4] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application for benefits was filed in 2014, and therefore the ALJ was required to apply the earlier treating-physician rule.

6

deemed lax." *Elder*, 529 F.3d at 415 (internal quotations omitted) (emphasis added); accord *Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021).

Plaintiff contends that the ALJ improperly assigned "little weight" to Dr. Salvador Gutierrez's May 2017 opinion. [Pl.'s Mem. at 13-14.] Plaintiff maintains that although the ALJ identified Dr. Gutierrez's long treatment relationship with Plaintiff, she ignored it and instead relied on Plaintiff's reported daily activities and the lack of objective evidence of pain in order to discount the doctor's conclusions. [*Id.*] Plaintiff's arguments are unavailing, however.

First, before weighing the opinion, the ALJ recounted Dr. Gutierrez's conclusions from the "conclusory, fill-in-the-blank form" he completed. [R. 26 (citing R. 967-70.).] As is relevant here, Dr. Gutierrez opined that Plaintiff's pain constantly, and her stress frequently, interfered with her attention and concentration needed to perform simple work tasks. [R. 26; *see* R. 967.] He opined that Plaintiff must lie down for three hours before needing to sit, stand, or walk; could sit, stand, or walk for an hour before needing to rest or change positions; could sit for one hour in an eight-hour workday; and could stand for one hour in an eight-hour workday. [R. 26; *see* R. 968-69.] As to other limitations, Dr. Gutierrez determined that Plaintiff needed unscheduled bathroom breaks, could rarely lift or carry less than five pounds, had significant limitations with reaching, handling, or fingering (but did not identify what they were), could not push or pull arm or leg controls, and could climb stairs and ramps but not ladders or scaffolds. [R. 26; *see* R. 969-70.] Lastly, Dr. Gutierrez concluded that Plaintiff would be off task more than 30% of a workday, absent from work five days or more a month, and less than 50% as efficient as an average worker. [R. 26; *see* R. 970.]

Next, the ALJ considered Dr. Gutierrez's opinion according to the appropriate factors. The ALJ recognized that Dr. Gutierrez was Plaintiff's "primary care provider" and accordingly

that he likely had a "strong understanding of the longitudinal impact of [her] impairments on her work-related functioning." [R. 27.] *See* 20 C.F.R. § 404.1527(c)(1, 2). She noted, however, that Dr. Gutierrez was not a specialist and had no express familiarity with the disability legal standards. [R. 28.] *See* 20 C.F.R. § 404.1527(c)(5, 6). Thus, the ALJ plainly did not "ignore" Dr. Gutierrez's treating relationship with Plaintiff, as Plaintiff asserts. [Pl.'s Mem. at 13-14.]

Rather, the ALJ weighed more heavily the consistency and supportability of Dr. Gutierrez's opinion in determining that his opinion warranted "little weight." [R. 27-28.] *See* 20 C.F.R. § 404.1527(c)(4). The ALJ specifically explained that Dr. Gutierrez opined that Plaintiff could sit and stand for just one hour in a workday, but that restriction was inconsistent with his treatment notes and Plaintiff's reports to her mental health providers that she "cleaned obsessively, cooked, and sometimes attended Zumba classes." [R. 27.] Plaintiff says that the ALJ mistook those activities for "impressive physical capabilities," that they were necessary activities for her mental health, and that there was no evidence that those activities involved sustained walking or standing. [Pl.'s Mem. at 13.] But Plaintiff overlooks that the ALJ was not equating them to full-time work; instead, she was merely identifying the obvious inconsistency—those activities required sitting or standing (and, in the case of Zumba, even more physical exertion) likely for longer than one hour total in an eight-hour day. [R. 27.] And the ALJ was not solely relying on these activities but also on Dr. Gutierrez's treatment notes; Plaintiff does not challenge the inconsistency between Dr. Gutierrez's records and his opinion.

Similarly, the ALJ concluded that Plaintiff's extensive cleaning and her initial hearing testimony that she played a game on her phone for two hours a day were not consistent with Dr. Gutierrez's unexplained opinion that Plaintiff had extreme manipulative limitations. [R. 27.] Further, although Plaintiff testified at the second hearing that she experienced pain when using

8

her cell phone, the ALJ noted that recent treatment records reflected few, if any, objective signs or findings that Plaintiff had decreased strength or manipulative abilities. [R. 27; *see* R. 572-73 (treatment note indicating hand pain but no abnormality noted on exam), R. 1003-04, 1022-23 (treatment notes reflecting normal strength).] Plaintiff argues that cleaning does not necessarily require manipulative proficiency, but the ALJ's conclusion that it would require some degree of reaching, handling, and fingering is logical. [Pl.'s Mem. at 13; R. 27.] And Plaintiff's contention that the ALJ improperly rejected Dr. Gutierrez's opinion based on a lack of objective evidence of pain is meritless. [Pl.'s Mem. at 13-14.] The ALJ's analysis did not discount Dr. Gutierrez's opinion solely on this basis; instead, the ALJ appropriately contrasted Dr. Gutierrez's assessment of the severity of Plaintiff's pain with the normal physical examination findings, Plaintiff's conservative treatment, and her reported ability to perform activities that showed she could still concentrate despite the alleged pain. [R. 27-28.]

Beyond these reasons, the ALJ pointed out that Plaintiff testified that Dr. Gutierrez asked her for input as to his opinion, which suggests that his opinion relied on Plaintiff's subjective reports. [R. 28.] This is also a legitimate reason to view Dr. Gutierrez's opinion skeptically. *See Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it."). Additionally, the ALJ identified two portions of Dr. Gutierrez's opinion that lacked any explanation: Dr. Gutierrez opined (1) that Plaintiff would have significant limitations in reaching, handling, or fingering but stated that he "did not know" the extent of Plaintiff's ability to reach, handle, or finger, and (2) that Plaintiff would need to lie down for three hours in a day but did not give a reason why that was. [R. 27; R. 969-70.]

9

Overall, the ALJ gave sufficient reasons for rejecting Dr. Gutierrez's opinion that tracked the applicable factors and properly relied on the record evidence.

Moving on to the second treating source, Plaintiff asserts that the ALJ erred in assigning "little weight" to Ms. Elisabeth Ihlenfeld's May 2017 opinion regarding Plaintiff's mental limitations. [Pl.'s Mem. at 14.] Ms. Ihlenfeld, a "MHP-Intern," reported that she saw Plaintiff for individual therapy appointments on a bi-weekly basis since October 2016 and diagnosed Plaintiff with Generalized Anxiety Disorder. [R. 971.] Ms. Ihlenfeld explained that Plaintiff experienced "moderate to severe levels of anxiety in social interactions," that interpersonal conflict could trigger her symptoms, and that she "thrived best [with a] predictable schedule [and] routine." [*Id.*] At times, Plaintiff's anxious or depressive symptoms "immobilized" her and she tended to "isolate herself" when "feeling impaired." [*Id.*] Plaintiff's symptoms can impair her concentration, but she had the ability to "complete certain types of tasks consistently" (for example, housework). [*Id.*] Ultimately, Ms. Ihlenfeld opined that Plaintiff could not function in a work environment on a full-time basis. [*Id.*]

The ALJ acknowledged that Ms. Ihlenfeld also had an extended treating relationship with Plaintiff, but concluded that Ms. Ihlenfeld's opinion was not consistent with: Plaintiff's own allegations, treatment notes indicating no significant depression, normal mental status examinations, and Plaintiff's appropriate behavior at both hearings. [R. 28 (citing R. 1186 (October 2017 progress note where Plaintiff was "mildly depressed"), 1194 (June 2018 progress note where provider noted Plaintiff had "no significant depressive symptoms")).] Plaintiff contends that the ALJ relied on a "false equivalency," improperly concluding that because Plaintiff could go to the movies, go out infrequently with a friend, sell items online, and attend Zumba that she could not possibly be as limited as Ms. Ihlenfeld suggested. [Pl.'s Mem. at 14.]

10

But the ALJ appropriately considered that these activities, which Plaintiff did with regularity at times, involved socialization with others to varying degrees, and concluded that they therefore did not support Ms. Ihlenfeld's opinion that Plaintiff had moderate to severe levels of anxiety. [R. 28; *see* R. 92 (goes out to eat three times a week), 93 (sells things online two hours a day), 420 (goes to movies or out to eat once a week), 703 (goes to Zumba three times a week).]

Plaintiff also dismisses the unremarkable mental status exams and her normal hearing behavior, contending that Ms. Ihlenfeld was in a better position to assess how she would function in full-time work rather than "in terms of brief spurts of seeming normalcy." [Pl.'s Mem. at 14.] Plaintiff has not explained how or why the reports of mental status exams represent only "brief spurts" as opposed to her usual condition. Indeed, the ALJ's earlier discussion of the medical evidence showed that, although Plaintiff sometimes experienced depressive episodes and difficulty concentrating because of anxiety, she had "good concentration" during appointments and her mental-health symptoms improved over time with treatment and were seemingly exacerbated only when she did not take her medication as prescribed. [R. 26.] And the ALJ identified that Plaintiff consistently had normal mental status examinations. [R. 28; *see, e.g.,* R. 712-13, 726-27, 736-37, 749-50, 786, 806-07, 820, 834, 926, 1004, 1010.] Without some indication that the ALJ overlooked evidence that supported the more severe restrictions Ms. Ihlenfeld endorsed, the ALJ's reasoning must be considered sound.

In sum, the ALJ gave detailed "good reasons" for assigning the opinions of treating sources Dr. Gutierrez and Ms. Ihlenfeld "little weight," and accordingly the Court has no reason to disturb the ALJ's weighing of those opinions. *Scott*, 647 F.3d at 739; *see also Elder*, 529 F.3d at 415.

11

B. **Plaintiff's Subjective Symptoms**

When evaluating a plaintiff's report of her symptoms, in addition to the medical evidence, the ALJ may also consider a plaintiff's daily activities, intensity of pain and other symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve symptoms. 20 C.F.R. § 404.1529(c)(1-3). The Court will overturn the ALJ's evaluation of Plaintiff's subjective statements about her symptoms only if it was "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). The ALJ must support her analysis with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Indeed, "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper*, 712 F.3d at 362 (internal quotation omitted).

Plaintiff challenges two aspects of the ALJ's reasoning in determining that Plaintiff's symptom reports were not entirely consistent with the record, arguing (1) that the ALJ erroneously considered Plaintiff's daily activities as inconsistent with her reports of pain and significant physical limitations, and (2) that the ALJ improperly relied on Plaintiff's non-compliance with treatment and conservative treatment to discount her allegations. [Pl.'s Mem. at 14-15.]

First, as to Plaintiff's daily activities of attending Zumba class, going out to eat, and going to the movies, the ALJ did not overstate these activities into a finding that Plaintiff could perform full-time work, but rather noted that they showed Plaintiff was not as limited as she

12

alleged.[5] *See Prill*, 23 F.4th at 748; *Regina P. v. Saul*, No. 19 C 3155, 2020 WL 4349888, at *5 (N.D. Ill. Jul. 29, 2020) ("The ALJ was permitted to consider [the] mismatch between [plaintiff's] daily activities and her symptom description.").

Next, as to Plaintiff's course of treatment, the ALJ properly considered in context any non-compliance with treatment recommendations and overall treatment regimen. In assessing Plaintiff's diabetes as not disabling, the ALJ pointed out that although Plaintiff had failed to follow through with referrals to see a podiatrist and an endocrinologist[6] and did not consistently take her insulin, the findings at her physical examinations were nonetheless normal. [R. 23.] When evaluating Plaintiff's depression and anxiety, the ALJ noted that Plaintiff had sporadically engaged in therapy and medication-management appointments, with "most reported symptom exacerbations (*e.g.,* alleged anxiety attacks, distracted thoughts) correlating with times where she was not in compliance with her prescribed medication regimen." [R. 25.] The ALJ specifically acknowledged, as Plaintiff now points out, [Pl.'s Mem. at 15], that at least on one occasion non-compliance was not Plaintiff's fault as the prescription was incorrectly written. [R. 25 n.3.] The ALJ's analysis, rather than faulting Plaintiff for lapses in medication or relying too heavily on the type of treatment she received, properly considered Plaintiff's treatment as a factor that suggested her symptoms were less severe than she alleged. *See* 20 C.F.R. § 404.1529(c)(3)(v).

In addition to these reasons, the ALJ thoroughly recounted the medical evidence in the record that did not match up with Plaintiff's subjective reports and identified several of

---

[5] Plaintiff makes a similar argument in relation to the ALJ's determination of her RFC, which is meritless for the same reasons, and thus the Court does not repeat its analysis. [Pl.'s Mem. at 11.]
[6] Both referrals were related to Plaintiff's diabetes. [*See* R. 562-63 (podiatrist referral), 568 (endocrinologist & podiatrist referral).]

13

Plaintiff's own statements about her symptoms that were inconsistent with each other. [R. 23-26.] Plaintiff does not dispute the ALJ's application of these factors, and both were appropriately considered by the ALJ. *See* SSR 16-3P, 2017 WL 5180304, at *5, 8. Because the ALJ gave multiple, supported reasons for finding that Plaintiff's subjective symptoms were not entirely consistent with the record, the Court concludes that the ALJ's evaluation was not "patently wrong." *Summers*, 864 F.3d at 528.

### C. Plaintiff's RFC

Plaintiff asserts that the ALJ also erred in failing to incorporate into Plaintiff's RFC all of the non-exertional limitations supported by the record. [Pl.'s Mem. at 8-12.] Plaintiff focuses on the ALJ's findings at step three[7]—which were then incorporated into the RFC—that Plaintiff had only moderate limitations in her ability to interact with others and to concentrate, persist, or maintain pace. [*Id.*] The ALJ's decision, however, only need be supported by substantial evidence, and Plaintiff's contentions are unavailing because they amount to a mere disagreement with the ALJ's weighing of the record evidence. *See Beardsley*, 758 F.3d at 836-37; *Shaun R. v. Saul*, No. 18 C 4036, 2019 WL 6834664, at *5 (N.D. Ill. Dec. 16, 2019) ("So, as she is required to do, the ALJ acknowledged evidence on both sides of the issue and reached a conclusion. As long as she didn't ignore evidence that points to a disability, she has fulfilled her duty to minimally articulate the path to her conclusion.").

As to Plaintiff's ability to interact with others, Plaintiff acknowledges that the ALJ considered Plaintiff's tendency to isolate when stressed, her panic attacks, and her relationship stressors with her family members, all things supporting, in Plaintiff's view, that she was more

---

[7] Plaintiff does not, however, challenge the step three finding that a Listing was not met or equaled. [Pl.'s Mem. at 9 & n.1.]

than moderately limited in interacting with others. [Pl.'s Mem. at 9; *see* R. 20.] But the ALJ also cited evidence that Plaintiff could go out to eat, to a movie, and to Zumba classes, that she interacted appropriately with treatment providers, and that she answered questions at two hearings without issue. [R. 20.] Plaintiff argues that this weighing of the evidence is illogical based on her own subjective reports and Ms. Ihlenfeld's opinion, [Pl.'s Mem. at 9-10], but, as discussed above, the ALJ did not find that Plaintiff's depression and anxiety were as severe as either she or her therapist reported. Ultimately, the ALJ determined that limiting Plaintiff to occasional interaction with supervisors and coworkers, but no interaction with the public, would account for her moderate limitations. [R. 20, 26.] The ALJ did what she was required to do in fairly weighing the evidence of Plaintiff's ability to socialize with others, and thus her RFC determination in this respect is supported by substantial evidence. *See Shaun R.*, 2019 WL 6834664, at *5.

Asserting error in the ALJ's evaluation of Plaintiff's ability to concentrate, persist, or maintain pace, Plaintiff once again points out that the ALJ identified both signs that she struggled in this area of functioning—reports in treatment notes of impaired concentration and fatigue—and signs that she still retained the capacity to concentrate on tasks—her cooperation with her physicians as well as her ability to watch T.V., play on her cell phone, and sell items online. [Pl.'s Mem. at 10-11; *see* R. 20.] Additionally, the ALJ relied on the "numerous treatment notes [indicating] that she was cooperative and alert with good attention and concentration." [R. 20; *see* R. 26 (citing R. 711, 713 (January 2016 progress note in which Plaintiff reported difficulty concentrating but during visit her attention and concentration was "[g]ood"), 726 (February 2016 progress note in which Plaintiff reported excessive worrying, but

15

her attention and concentration was "[g]ood")).][8] The one treatment record to which Plaintiff cites (to support that she had problems with "ruminating thoughts, becoming overwhelmed, and OCD behavior") reflects only her subjective reports of those symptoms and indeed a relatively normal examination in which her attention and concentration were reported as "OK." [R. 816.] This is insufficient to undermine the other evidence the ALJ cited and her ultimate conclusion after weighing the competing evidence that Plaintiff was only moderately limited in concentrating (and not limited in persisting or maintaining pace). [R. 20.]

To account for Plaintiff's moderate limitation in just concentrating, the ALJ limited her to "simple, routine, repetitive tasks" and "simple, work-related decisions." [R. 20.] The Seventh Circuit has repeatedly criticized the use of "simple, routine, repetitive tasks" in an RFC where the limitation was unconnected to the claimant's particular functional limitation found in the record. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). That is not the situation here, however. After thoroughly reviewing the evidence, the ALJ thought that Plaintiff could maintain concentration for "extended periods of time, or at least as long as necessary to complete the task in which she is engaged," and imposed the restrictions she did to accommodate Plaintiff's occasional difficulty concentrating. [R. 20.] Because the RFC restrictions adopted here address Plaintiff's underlying symptoms in the record, they are appropriate. *See Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022); *see also Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (ALJ must account for totality of claimant's limitations in RFC but no "magic words" are required). Moreover, even if the ALJ erred in translating

---

[8] Plaintiff asserts that the ALJ never provided a more detailed assessment of the RFC, [Pl.'s Mem. at 11], but the ALJ did indeed include later in the decision further reasoning behind finding moderate limitations in interacting with others and concentrating, persisting, or maintaining pace and the resulting RFC limitation, [R. 26].

Plaintiff's moderate concentration limitation into these specific terms, Plaintiff has not provided examples of any additional restrictions that the ALJ should have included to capture this limitation. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address [Plaintiff]'s limitations in concentration, persistence, or pace because [she] hypothesizes none.").

As a final matter, Plaintiff maintains that "[t]here is no support for a finding that Plaintiff, when she is either having a depressive episode or an anxiety attack (or both) would be able to perform even simple, routine and repetitive tasks, make simple work related decisions, handle occasional workplace changes, and have occasional interaction with supervisors and coworkers." [Pl.'s Mem. at 12.] And, according to Plaintiff, adding in the effects of her pain, which Dr. Gutierrez opined would constantly interfere with her ability to concentrate and remain on task, as well as her need for unscheduled bathroom breaks, she would be off task too much to sustain full-time work. [*Id.*] This is perhaps true, but the ALJ did not endorse this view of the evidence. Instead, the ALJ concluded that the restrictions Plaintiff cites would help Plaintiff avoid depressive episodes or anxiety attacks in the first instance and that Plaintiff did not experience as severe or as frequent depressive and anxious symptoms as she alleged. [R. 26.] Further, the ALJ found Dr. Gutierrez's opinion deserving of "little weight." [R. 27.] Thus, the ALJ did not need to incorporate restrictions for those symptoms into the RFC. *See Patrick R. v. Saul*, No. 19 CV 282, 2020 WL 777295, at *8 (Feb. 18, 2020) (noting that the ALJ only needs to incorporate into RFC limitations that she found "credible").

Because the ALJ's RFC finding is supported by substantial evidence overall, it must be upheld. *See Beardsley*, 758 F.3d at 836-37.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 22] is denied, and the Commissioner's motion for summary judgment [dkt. 26] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: July 25, 2022

_____
BETH W. JANTZ
United States Magistrate Judge